Paul D. DUFFY, Jr.,
Petitioner-Appellant,

v.

Dale E. FOLTZ, Respondent-Appellee.

No. 84–1869.

United States Court of Appeals,
Sixth Circuit.

Argued June 12, 1985.

Decided Oct. 23, 1986.

Arthur J. Tarnow, Detroit, Mich., for petitioner-appellant.

Timothy A. Baughman, Detroit, Mich., for respondent-appellee.

Before MILBURN, Circuit Judge, and EDWARDS and BROWN, Senior Circuit Judges.

BAILEY BROWN, Senior Circuit Judge.

Appellant, Paul D. Duffy, Jr., appeals the denial of his application for habeas corpus relief by the District Court for the Eastern District of Michigan. Upon consideration, we determine that the district court did not err in denying relief and therefore we affirm.

Duffy was found, upon a plea of not guilty and not guilty by reason of insanity, guilty of rape and kidnapping by a jury in 1974 and in a Michigan court. Mich.Comp. Laws §§ 750.520, 750.349. The Court of Appeals of Michigan affirmed the conviction. *People v. Duffy*, 67 Mich.App. 266, 240 N.W.2d 771 (1976). The trial court in 1982 denied, on the merits, an application, in which the instant federal constitutional contentions were first made, for leave to file a delayed motion for a new trial. In the same year, the Michigan Court of Appeals denied, on the merits, an application for a delayed appeal and in 1983 the Michigan Supreme Court denied an application for leave to appeal. It appears that Duffy has exhausted his remedies (28 U.S.C. § 2254) in the state courts in two separate ways since the state courts were presented

with a fair opportunity to rule on his federal constitutional claims and, in addition, there was no avenue for further review of the instant federal constitutional contentions in the state court system when he filed his habeas petition. *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). Moreover, Duffy need not show "cause and prejudice" as he would be required to show if there had been a procedural default that was a substantial basis for denial of relief, *Hockenbury v. Sowders*, 620 F.2d 111 (6th Cir. 1980), *cert. denied*, 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 367 (1981), or be required to show if the Michigan courts had not had a fair opportunity to correct the claimed federal constitutional error, *Fornash v. Marshall*, 686 F.2d 1179, 1186 (6th Cir. 1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1349, 75 L.Ed.2d 796 (1983) (applying, by analogy, *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). The State does not contend that there was a procedural default or that the state courts did not have such an opportunity.

As reflected by the opinion of the Michigan Court of Appeals, *People v. Duffy*, 67 Mich.App. 266, 240 N.W.2d 771 (1976), the state had, on the objective facts, a very strong case against Duffy. He bound and at knife point abducted the female victim from her home, after first entering her yard, he testified, looking for a cat, and drove her to an isolated area and raped her. The local police, who had been alerted by the victim's neighbor, spotted Duffy returning the victim to her home and arrested him after a chase. The case was vigorously defended, however, on the basis of an insanity defense.

At trial, after the state's overwhelming proof as to the abduction and rape by Duffy, followed by Duffy's counsel's opening statement to the jury that Duffy would concede that he abducted and raped the victim and that his sole defense would be that of not guilty by reason of insanity, and after Duffy had in his testimony confirmed the victim's version of the facts and at great length testified about a prior rape he had committed for which he was held in a mental institution for five years, and after one of the two psychiatrists who testified in Duffy's behalf had testified that he was indeed temporarily insane at the time of the alleged offense, the trial judge suggested, in the jury's absence, that the jury be instructed that Duffy conceded that he abducted and raped the victim and his sole defense would be that of insanity. Duffy's counsel agreed to this. The State offered no expert testimony to rebut that of the two experts who testified in Duffy's behalf. Without objection, the trial judge did not instruct the jury on the elements of the crimes of rape and kidnapping, but did instruct that Duffy admitted the acts alleged, and that the jury's alternatives were to find Duffy "guilty as charged" or "not guilty by reason of insanity." Since Duffy had come forward with evidence of his insanity, the trial court also instructed the jury that the burden was on the State to prove Duffy's sanity beyond a reasonable doubt. Duffy's counsel argued to the jury only that he was not guilty because he was insane and therefore the jury should find him not guilty by reason of insanity. As stated, the jury found Duffy guilty of both crimes.

In the district court, Duffy made two sets of contentions. The first is that, by his counsel's consent to the charge to the jury that Duffy conceded the alleged facts as to rape and kidnapping and that his only defense was that of insanity at the time of the alleged offenses and his counsel's agreement to the charge that the jury's only verdict alternatives were "guilty as charged" or "not guilty by reason of insanity," he was denied his constitutional right to a jury trial and that he was also denied constitutional due process by the failure of the trial court to instruct the jury on the elements of rape and kidnapping. The second set of contentions is that, under the circumstances presented at the trial, Duffy's conviction was a violation of federal due process because, under the proof as presented, Duffy's sanity became an element of the crimes charged and that the jury could not within reason find beyond a

reasonable doubt that he was sane at the time of the alleged offenses.

## I.

As stated, Duffy contends that he was denied a jury trial by his counsel's concession that he committed the acts as alleged and by the trial court's failure, with Duffy's counsel's agreement, to charge the jury that he might be found "not guilty." He further contends that he was denied due process by the failure of the trial court, with his counsel's agreement, to instruct the jury on elements of the crimes of rape and kidnapping.

It appears to this court that though the foregoing contentions are asserted by Duffy as separate propositions, they raise the same question, which is this: was Duffy deprived of a federal constitutional right to a jury trial and deprived of due process by his trial counsel's conceding, as a trial tactic, that Duffy committed the acts as alleged and contending only that he was "not guilty by reason of insanity?"

While, as Duffy asserts, the record does not affirmatively show that Duffy voluntarily and knowingly agreed to stand only on a plea of not guilty by reason of insanity, we note the following. Duffy does not contend that, in making this trial tactic decision, he received ineffective assistance of counsel. Moreover, Duffy does not contend that he did not *in fact* knowingly and voluntarily agree to this trial tactic. Further, Duffy does not even contend that such was not, under the circumstances, the best, indeed the only, trial tactic available. He simply contends that, in a nutshell, he was unconstitutionally denied a jury trial and due process because the record does not affirmatively show that he agreed to his trial counsel's decision.

If Duffy's counsel had pleaded him guilty, there being no showing on the record that Duffy agreed thereto, we would have a serious question in view of the holding of the Supreme Court in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Moreover, if Duffy's counsel's opening statement, stipulation and argument to the jury were in fact made without his agreement and if such were a functional equivalent of a guilty plea, we would have a serious question under our decision in *Wiley v. Sowders,* 647 F.2d 642 (6th Cir.), *cert. denied,* 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981). But Duffy's counsel did not enter a guilty plea for him, and his opening statement, stipulation and argument did not amount to a functional equivalent of a guilty plea because under Michigan law a plea of "not guilty by reason of insanity" is not a guilty plea and an opening statement, stipulation and argument in support of an insanity defense do not amount to a functional equivalent of a guilty plea. As stated by the Michigan Supreme Court in *People v. Martin,* 386 Mich. 407, 192 N.W.2d 215, 225 (1971), *cert. denied,* 408 U.S. 929, 92 S.Ct. 2505, 33 L.Ed.2d 342 (1972):

> A plea of not guilty by reason of insanity is not a plea that incriminates. It is just the opposite. It is a special plea in avoidance of the guilty charge.

Accordingly, we conclude that Duffy was not, by use of this trial tactic, deprived of a federal constitutional right to a jury trial or due process.

## II.

Duffy's other contention is that, under the circumstances presented here, his sanity became an element of the crime, the jury could not, on the proof, within reason find beyond a reasonable doubt that he was sane, and therefore his conviction was in violation of federal due process.

After this appeal was argued to this panel, the panel filed an opinion, 772 F.2d 1271 (6th Cir.1985), on September 13, 1985, holding that, as we now hold, Duffy had not been denied his constitutional rights to a jury trial or to due process as a result of his counsel's use of this trial tactic. However, the panel also held, Judge Milburn dissenting, that under the circumstances presented here, sanity was an element of the crimes under Michigan law. The panel further held that Duffy's conviction was in

violation of the due process clause unless the proof of sanity met the reasonable doubt standard under *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and that: "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found [sanity] beyond a reasonable doubt." 772 F.2d at 1275 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Finally, the prior panel opinion concluded that, on the evidence presented, no rational jury, after viewing the evidence most favorably to the prosecution, could have found Duffy sane at the time of these alleged crimes. *Id.* at 1277–78. The panel therefore reversed the district court and granted habeas relief. *Id.* at 1278.

It is undisputed that, under Michigan law, once a defendant introduces evidence of insanity, the prosecution has the burden of proving sanity beyond a reasonable doubt. However, this burden-shifting rule, the prior opinion recognized, does not make sanity an element of the crime for federal due process purposes. As the Supreme Court held in *Engle v. Isaac*, 456 U.S. 107, 121, 102 S.Ct. 1558, 1568, 71 L.Ed.2d 783 (1982), there must be "concrete evidence" that the state legislature or courts intended "to go further" than simply placing a burden on the state of disproving an affirmative defense, such as insanity, beyond a reasonable doubt.

The prior opinion determined that there was convincing evidence that the Michigan Supreme Court intended to go further than merely placing the burden on the State of disproving this affirmative defense beyond a reasonable doubt. In *People v. Murphy*, 416 Mich. 453, 331 N.W.2d 152 (1982), a case very similar to this one, that court reversed a conviction for rape on the ground that there was insufficient evidence of sanity. In doing so, the Michigan court not only held that the "defendant's sanity at the time of the crime was as much an element to be proved by the prosecution beyond a reasonable doubt as the other statutory elements of the offenses charged," 331 N.W.2d at 157, but it also held that: "Our review of the evidence for sufficiency to support a jury verdict of sanity is governed by the standard announced in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560...." *Id.* at 154. The Michigan court further stated: "In protecting the constitutional standard of proof in criminal cases, *In re Winship*, 397 U.S. 358 (1970) ..., we conclude that the evidence of sanity offered by the prosecution was insufficient to convince any rational trier of fact that the defendant was sane beyond a reasonable doubt." *Id.* at 158. The prior opinion therefore read *Murphy* as expressly holding not only that sanity became an element of the crimes for state purposes, which would have satisfied the *Engle v. Isaac* test, but, indeed, that it became an element of the crime for federal due process purposes, which more than satisfied the *Engle v. Isaac* test.

### III

The State then applied for a rehearing with a suggestion for a rehearing *en banc*, contending that the panel had misconstrued Michigan law in holding that, under the circumstances presented here, sanity was an element of the crimes. By a majority vote, this court agreed to rehear *en banc*, and by order entered October 22, 1985, the panel's opinion and judgment were vacated.

Thereafter, this court determined, pursuant to Rule 797.2(a) of the General Court Rules of Michigan, to certify the question of Michigan law to the Supreme Court of Michigan, and by order entered on December 26, 1985, certified the question as follows: "Is sanity an element of the crimes of rape and kidnapping as defined by Michigan law?"

After first declining the request to answer this certified question, the Michigan Supreme Court, on March 14, 1986, on its own motion, vacated its order and accepted the request to answer the question. On March 18, 1986, this court entered an order vacating the order granting the *en banc* hearing, and therefore this cause is now

**54**

before the original panel for consideration pursuant to the granting of the State's motion to rehear. On August 5, 1986, the Michigan Supreme Court filed an opinion in answer to this court's certified question. 425 Mich. 467, 390 N.W.2d 620 (1986).

### IV.

The Michigan Supreme Court, after reviewing the Michigan rape and kidnapping statutes and its precedents, concluded that sanity is not an element of these crimes. The first paragraph of the Michigan court's opinion well summarizes its holding:

> This matter comes before this court pursuant to a question certified by the United States Court of Appeals for the Sixth Circuit. The question this Court has agreed to answer is whether sanity is an element of the crimes of rape and kidnapping as defined by Michigan law. We hold that sanity is not an element of these crimes and that insanity is a burden-shifting affirmative defense, placing the burden of going forward with evidence of insanity on the defendant. The defendant having done so, the burden of going forward, with evidence of defendant's sanity beyond a reasonable doubt, shifts to the prosecution.

390 N.W.2d at 621 (footnotes omitted).

It might be argued that the question as posed to the Michigan court by this court is not precisely the question that is before us now and that was decided by the prior panel opinion. That is to say, it could be argued that the question is not whether sanity is an element of these crimes as the crimes are defined by state law and as a general proposition, but rather is whether sanity becomes an element of the crimes under state law *after* evidence of insanity is introduced. However, the Michigan Supreme Court had the prior panel opinion before it and therefore was informed as to the precise question presented by this appeal. We are satisfied that the Michigan court understood and answered the question before this panel.

We recognize that, in interpreting its *Murphy* opinion, *supra,* upon which this panel had relied in its prior opinion, the Michigan court did not deal with that part of *Murphy* which appeared to hold that federal due process required proof of Murphy's sanity beyond a reasonable doubt as such is defined by *Jackson v. Virginia, supra.* However, *Engle v. Isaac, supra,* makes clear that it is for the Michigan court to say what Michigan law *is* and that we are bound, for present purposes, by the Michigan court's interpretation of its law. Since under Michigan law Duffy's sanity was not and did not become an element of the crimes for which he was convicted, the claim that there was insufficient proof of sanity does not raise a federal constitutional issue.

The judgment of the district court denying habeas relief is therefore AFFIRMED.